### WOLF *v.* HOUSTON, W. S. & P. F. R. Co.

(*Supreme Court, General Term, First Department.*   November 23, 1888.)

HORSE AND STREET RAILROADS—NEGLIGENCE—INJURIES TO PERSONS ON TRACK.
  Plaintiff, a child about 18 months old, in company with his mother, who had hold of his hand, started across a street.   A street car was approaching on an up-grade, for a time at a moderate pace, and then at an increased speed, the driver urging his horses.   As it approached the part of the street where plaintiff and his mother were, she held up her hand to signal the driver to stop, but did nothing to indicate that her purpose was other than to take passage on the car.   She was about two feet from the track as the horses passed, but, becoming suddenly frightened and confused, she lost her hold on the child, and he, in some unexplained manner, got on the track, and was injured.   *Held,* that the railroad company was not liable.

Appeal from circuit court, New York county; LAWRENCE, Justice.

Action by Isaac Wolf, by his guardian, against the Houston, West Street & Pavonia Ferry Railroad Company, for personal injuries. From a judgment dismissing the complaint, plaintiff appeals.

Argued before VAN BRUNT, P. J., and DANIELS and BARTLETT, JJ.

*Max Altemeyer*, (*M. Warley Platzek*, of counsel,) for appellant. *Miller & Wells*, for respondent.

DANIELS, J. The action was brought to recover damages which the plaintiff sustained by being run over by a car of the defendant on East Thirty-Fifth street, on the 28th of April, 1886. The plaintiff at the time was of the age of about 18 months, and, in company with his mother, had started to cross the street, she having hold of one of his hands. The car was approaching towards that part of the street upon the up-grade, and, after proceeding for a time at a moderate pace, is stated by her to have been increased in its speed by the driver urging and crowding his horses. It is stated by her to have approached the part of the track which she and her child reached about the time when she expected to have crossed the track. She held up her hand to signal the driver to stop or delay the progress of the car; but there was no act or statement on her part that could have led him to suppose that she desired the progress of the car to be slackened for any other object than to take it as a passenger. She did not approach the track nearer than about two feet from it, and the horses and the car passed her where she stood, without touching her person. But her testimony was that she was so much frightened by the rapidity of the approach of the car as to have become confused, and substantially helpless, and while in that condition the child, in some manner which she could not state or explain, went upon the track, and was run over by the car, breaking one of his legs below the knee, and seriously injuring the other. He was picked up in this condition at or near the rear platform of the car, but how he came upon the track, or under the wheels of the car, were facts which the evidence in the case left entirely without explanation. The last that is disclosed concerning him before the accident is that his mother held his hand in hers, and in some unexplained way their hands were separated, and the child was upon the track, and the accident happened. It is clear from her statement that the accident was not caused by the speedy driving or urging of the car. From the position occupied by the child and his mother, there was no reason for the driver to believe that the child was endangered in any manner by the progress the car at the time was making; and if his mother had continued to maintain her hold of the child's hand no injury to it could possibly have taken place, and no mismanagement or negligence therefore can be attributed to the driver, upon which the action can be maintained against the company. There was nothing in the transaction from which it could have been supposed that this woman would become terrified, as she states she did, by the approach of this car, or from which it could be inferred that she would so far lose her self-possession as to endanger the safety of her child. But that she was in this condition is stated by her in her evidence, and it was probably truthfully given by her; for if she had retained the control of her senses and experience, she would not have permitted the child to have been endangered and injured in the manner in which it was. In her agitation she probably placed the child in the perilous situation in which she first discovered it, after it had become detached from her hold. But that was no fault of the driver. It was her fault, on the contrary, which could not have been expected to arise out of any fact or circumstance attending this unfortunate affair. It is undoubtedly true that the drivers of cars, as well as of other vehicles, upon the streets of the city, are grossly indifferent to the safety of persons on foot, who are as much entitled to the use of the streets as the vehicles which are driven upon them, and they are as completely within the protection of the law as the

vehicles themselves are when they are reasonably and carefully managed; and, where injuries are caused to them by such inattentive driving and control of the vehicles, the owners as well as the drivers are legally liable. But the most liberal application of the principle securing that liability will not maintain this action; for in this case the accident to the child was not caused by improper conduct on the part of the driver, but by the unusual agitation of the mother, and her failure to observe her instinctive inclination to protect and secure the safety of her child. There was nothing in the way to prevent her from receding from the place where she stood, and in that manner to have avoided even the possibility of such an occurrence. But her failure to do so, as well as the exposure of the child to the accident, is attributed by her to her agitated state of mind. For that the defendant is not liable, and the judgment should accordingly be affirmed.

VAN BRUNT, P. J., and BARTLETT, J., concur.